O

1
2
3
4
5
6
7

8                          **UNITED STATES DISTRICT COURT**

9                        **CENTRAL DISTRICT OF CALIFORNIA**

10                             **WESTERN DIVISION**

11

12   KAGHTSTRIK SARGSYAN,              )      Case No. CV 06-01450-MLG
                                       )
13                  Plaintiff,         )      MEMORANDUM OPINION AND ORDER
                                       )
14          v.                         )
                                       )
15   JO ANNE B. BARNHART,              )
     Commissioner of the              )
16   Social Security                   )
     Administration,                   )
17                                     )
                    Defendant.         )
18   _____  )

19       Plaintiff Kaghtstrik Sargsyan ("Plaintiff") seeks judicial review

20   of  the  Commissioner's  final  decision  denying  her  application  for

21   supplemental security income benefits ("SSI") pursuant to Title XVI of

22   the  Social  Security  Act.    For  the  reasons  stated  below,  the

23   Commissioner's decision should be affirmed and this action should be

24   dismissed with prejudice.

25

26   **I.   Factual and Procedural Background**

27       Plaintiff was born on February 26, 1953. (Administrative Record

28   ("AR") at 124).  She has a seventh grade education and is illiterate in

English.  (AR at 55).  She has relevant work experience as a school janitor.  (AR at 28).

Plaintiff first filed an application for SSI on June 6, 2000.  (AR at 15).  This application was denied at the initial level of review.  (AR at 15).  A hearing was held before Administrative Law Judge Samuel W. Warner ("ALJ Warner").  On February 21, 2002, ALJ Warner issued a decision finding that Plaintiff was not under a disability, as defined in the Social Security Act.  (AR at 54-58).  Because Plaintiff did not appeal ALJ Warner's decision, it became the final decision of the Commissioner.  (AR at 15).

On May 28, 2002, Plaintiff filed a second application for SSI.  (AR at 15, 124-27).  That application was denied initially and again, after an administrative hearing before Administrative Law Judge Earl Waits.  (AR at 15, 65-70, 79-82).  On February 10, 2004, the Appeals Council vacated ALJ Waits' decision and remanded the case for further proceedings.  (AR at 91-92).[1]

In accordance with the Appeals Council's order, another administrative hearing was held before Administrative Law Judge Richard A. Urbin ("ALJ Urbin") on June 13, 2005.  (AR at 393-434).  Plaintiff, who was represented by counsel, testified at the hearing with the assistance of an Armenian interpreter.  (AR at 395-425).  A vocational expert also testified.  (AR at 425-31).  On December 6, 2005, ALJ Urbin issued a decision finding that Plaintiff was not under a disability, as defined in the Social Security Act.  (AR at 15-29).  ALJ Urbin determined that Plaintiff had not engaged in substantial gainful

---

[1]  On January 31, 2004, while the request for review of ALJ Waits' decision was pending before the Appeals Council, Plaintiff filed a third application for SSI.  (AR at 15).

activity since the date she had filed her second application for SSI, May 28, 2002.[2] (AR at 16). Next, ALJ Urbin found that Plaintiff suffers from obesity, headaches, depression NOS, anxiety NOS, degenerative disc disease of the lumbosacral spine, and arthritis of the lumbosacral spine, which are "severe" in combination, but that these impairments did not meet or equal one of the of the listed impairments in Appendix 1, Subpart P, Regulations No. 4 ("the Listings"). (AR at 18-19). Because ALJ Urbin found that Plaintiff did not produce evidence establishing "changed circumstances" since the date ALJ Warner issued his decision denying benefits on Plaintiff's first application, ALJ Urbin adopted the residual functional capacity assessment made by ALJ Warner. (AR at 21-24). Specifically, ALJ Urbin found that Plaintiff was capable of performing medium work (*i.e.,* lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and/or walking for a total six hours in an eight-hour workday, and sitting for a total six hours in an eight-hour workday) with occasional stooping and crouching. (AR at 29). Based on this residual functional capacity, ALJ Urbin determined that Plaintiff was capable of performing her past relevant work as a school janitor, as that job was actually performed. (AR at 28-29).

On February 24, 2006, the Appeals Council denied review. (AR at 5-7). Plaintiff then commenced this action for judicial review.

\\

---

[2] Although Plaintiff alleged an onset date of February 1, 1997, ALJ Urbin declined to reopen Plaintiff's first SSI application, which was filed on June 6, 2000. (AR at 15). Therefore, the period at issue in this case is the date that Plaintiff filed her second application for SSI, May 28, 2002, through the date of ALJ Urbin's decision, December 6, 2005. (AR at 15-16).

3

The parties filed a Joint Stipulation of disputed issues on December 4, 2006.  Plaintiff raises the following arguments:

1.  The ALJ erred by failing to find that Plaintiff established "changed circumstances" thereby rebutting the presumption of continuing nondisability.

2.  The ALJ erred by failing to find that Plaintiff established "changed circumstances" when she changed age categories.

3.  The ALJ erred by finding that Plaintiff has the residual functional capacity to perform medium exertional activities, with occasional stooping and bending.

Plaintiff seeks remand for a payment of benefits or, in the alternative, remand for a new administrative hearing and further development of the record.  (Joint Stipulation at 36-37).  The Commissioner requests that the ALJ's Decision be affirmed.  (Joint Stipulation at 37).  The Joint Stipulation has been taken under submission without oral argument.

## II.  **Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  *Richardson*, 402 U.S. at

4

401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996).  It is more than a scintilla, but less than a preponderance.  *Reddick*, 157 F.3d at 720.  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  *Id.*  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  *Id.* at 720-721.

**III.  Discussion**

    **A.   Changed Circumstances**

    When a claimant's application for SSI benefits is denied and the claimant does not appeal, the decision denying benefits becomes binding on all parties and creates a presumption of continuing nondisability.  *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985).  In a subsequent application for SSI based on the same disability, the claimant "must prove 'changed circumstances' indicating a greater disability."  *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988)(quoting *Taylor*, 765 F.2d at 875).  It is the claimant's burden to demonstrate that there is new information which shows a disability, otherwise the previous judgment will be used by the ALJ in denying the next claim.  *Lyle v. Secretary of Health and Human Services*, 700 F.2d 566, 568 (9th Cir. 1983).

    Here, ALJ Urbin determined that Plaintiff failed to present evidence establishing "changed circumstances" after ALJ Warner had issued his decision on February 21, 2002.  (AR at 20, 54-58).  Therefore, ALJ Urbin adopted ALJ Warner's finding that Plaintiff has the residual functional capacity for medium work, with no more than

occasional stooping and bending.  (AR at 22, 29, 58).  Plaintiff claims that ALJ Urbin erred in finding that she failed to rebut the presumption of continuing nondisability.  Relying on a CT scan of her lumbar spine dated November 10, 2004, Plaintiff contends that there is evidence that she now suffers from lumbar radiculopathy (nerve irritation caused by damage to the discs between the vertebrae), a new impairment.  (Joint Stipulation at 6-7; AR at 362).  According to Plaintiff, a previous CT scan showed no significant compression over the nerve roots.  (Joint Stipulation at 7).  Plaintiff's argument is unconvincing.

In his decision, ALJ Urbin specifically rejected a diagnosis of lumbar radiculopathy, finding that it was not supported by the medically acceptable clinical or laboratory techniques.  (AR at 22).  Although the CT scan of Plaintiff's lumbosacral spine from November 2004 indicated some nerve root compression at L4-5 and L5-S1 and slight neuroforamenal narrowing, ALJ Urbin found that the CT scan did not overcome "the normal or near-normal" back and neurological reports issued by Plaintiff's treating physician, Noobar Janoian, M.D.  (AR at 20-21).  For example, in April 2004 and July 2004, Dr. Janoian reported that Plaintiff's neurological examination was grossly within normal limits.  (AR at 20, 311, 319).  In March 2002, Dr. Janoian indicated that Plaintiff's back was normal.  (AR at 20, 247).  ALJ Urbin also noted that the clinical findings made by the consultative neurologist, Sarah L. Maze, M.D., were inconsistent with a conclusion of changed circumstances.  (AR at 21, 381-86).  Dr. Maze, who examined Plaintiff in March 2005, reported that there was "no evidence on examination of lumbar radiculopathy."  (AR at 385).  Dr. Maze reported that Plaintiff's sensation was intact, her reflexes were brisk, and her motor examination, grip strength, and coordination were normal.  (AR at 20-21, 367).  Dr. Maze concluded that

6

Plaintiff's ability to lift, carry, stand, walk, sit, push or pull were not affected by her alleged impairments. (AR at 388-89). Dr. Maze's findings, together with the cited reports from Dr. Janoian, provide substantial evidence in support of ALJ Urbin's conclusion that Plaintiff has not established "changed circumstances" with respect to her lumbosacral condition since the previous finding of nondisability.

Next, Plaintiff contends that she rebutted the presumption of continuing nondisability because there was objective clinical evidence showing a decrease in the range of motion in her back. (Joint Stipulation at 18-19). In January 2001, consultative examiner Steven Gerson, D.O. reported that Plaintiff could flex her back to 70 degrees. (AR at 20, 56). In March 2005, Dr. Maze reported that Plaintiff was able to forward flex to 50 degrees. (AR at 384). Plaintiff also cites two positive straight leg raising tests as evidence of a functional deterioration. (Joint Stipulation at 19-20). Plaintiff asserts that the decrease in the range of motion and positive straight leg raising tests indicate a greater disability. (Joint Stipulation at 18-19). However, Dr. Maze concluded that Plaintiff had no exertional restrictions, despite any purported restrictions in her range of motion or positive straight leg raising tests. (AR at 388-89). Further, as noted by ALJ Urbin, subsequent reports by Dr. Janoian indicate that Plaintiff's neurological examinations were grossly within normal limits. (AR at 311, 319). Thus, Plaintiff has not established a new impairment or significant deterioration in her existing impairments.

### B.   Plaintiff's Age

Plaintiff asserts that a change in her age category, as defined in the medical-vocational guidelines ("Grids") (20 C.F.R. Pt. 404, Subpt. P, App. 2), constitutes a changed circumstance that precludes the

7

application of *res judicata*.   (Joint Stipulation at 21); *Chavez*, 844 F.2d at 693.   At the time ALJ Warner issued his decision denying benefits, Plaintiff was 48 years old and in the "younger person" age category.   *See* 20 C.F.R. § 416.963(c); 20 C.F.R. Pt. 404, Subpt. P, App. 2.   By the time she filed her third application for SSI on January 31, 2004, Plaintiff was 50 years old and in the "closely approaching advanced age" category.   20 C.F.R. § 416.963(d).

Contrary to Plaintiff's argument, the change in age category has no impact on the outcome of ALJ Urbin's disability decision because Plaintiff was found to have the residual functional capacity for medium work.   (AR at 22-24).   The table applicable to individuals with a residual functional capacity of medium work, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 3, finds individuals of "closely approaching advanced age" to be not disabled.   20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 203.18-203.24.   Because a change in age status is not "outcome-determinative" under the bright-line distinctions drawn by the Grids, attainment of the "closely approaching advanced age" category does not constitute a changed circumstance.   *Cf.* Chavez, 844 F.3d at 693 (attainment of "advanced age" constituted a changed circumstance where claimant was limited to light work and would be found disabled if the claimant has limited education and his skills were not transferable).

### C.  Residual Functional Capacity

Plaintiff contends that the ALJ improperly rejected the opinion of her treating physician, Dr. Janoian, who diagnosed Plaintiff as suffering from lumbar radiculopathy and opined that Plaintiff was temporarily disabled.   For the reasons discussed above, ALJ Urbin properly applied *res judicata* to ALJ Warner's decision and residual functional capacity assessment for medium work.   (AR at 22).

1   Nevertheless, there is also substantial evidence supporting the ALJ's
2   assessment of Plaintiff's residual functional capacity and decision to
3   discount Dr. Janoian's opinion of disability.

4        An ALJ may disregard a treating physician's opinion whether or not
5   that opinion is contradicted.  *Andrews v. Shalala*, 53 F.3d 1035, 1041
6   (9th Cir. 1995)(ALJ may credit opinion of nontreating source based on
7   independent clinical findings over treating physician's opinion)(citing
8   *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).   If the
9   treating physician's opinion is contradicted, and the opinion of a
10  non-treating source is based upon independent clinical findings that
11  differ from those of the treating physician, the opinion of the
12  non-treating source may itself be substantial evidence on which the ALJ
13  may rely.  *Andrews*, 53 F.3d at 1041.   Where, on the other hand, a
14  non-treating source's opinion contradicts that of the treating
15  physician, but is not based on independent clinical findings, or rests
16  on clinical findings also considered by the treating physician, the
17  opinion of the treating physician may be rejected only if the ALJ gives
18  specific, legitimate reasons for doing so that are based on substantial
19  evidence. *Id.; Morgan v. Commissioner of Social Security*, 169 F.3d 595,
20  600 (9th Cir. 1999).

21       As noted above, Dr. Maze completed a neurologic evaluation of
22  Plaintiff in March 2005. (AR at 381-86). Dr. Maze diagnosed Plaintiff
23  as suffering from chronic pain syndrome.   (AR at 385).   However, Dr.
24  Maze found that Plaintiff's subjective complaints of chronic pain could
25  not "be explained at all by the objective findings on examination" and
26  there was no evidence of lumbar radiculopathy. (AR at 385).  Other than
27  a limitation to occasional climbing, Dr. Maze assessed no other
28  restrictions. (AR at 388-90). ALJ Urbin properly credited Dr. Maze's

9

1  findings over the contradictory opinion of Dr. Janoian, as Dr. Maze
2  based her report on independent clinical findings. *See Andrews*, 53 F.3d
3  at 1041.

4      Further, ALJ Urbin noted that there were inconsistencies in Dr.
5  Janoian's reports.  (AR at 22-23); *Magallanes v. Bowen*, 881 F.2d 747,
6  751-52 (9th Cir. 1989)(holding that ALJ properly rejected treating
7  physician's opinion when inconsistent with other evidence in record).
8  As discussed above, ALJ Urbin specifically rejected Dr. Janoian's
9  diagnosis of lumbar radiculopathy because it was not supported by
10 medically acceptable clinical or laboratory diagnostic techniques.  (AR
11 at 22, 385).  ALJ Urbin also noted that the amount of headache
12 medication prescribed by Dr. Janoian was inconsistent with his report
13 that Plaintiff suffers from headaches lasting a few hours on almost a
14 daily basis.  (AR at 22-23, 283).  In addition, although Dr. Janoian
15 reported that Plaintiff's back pain incapacitates her to point that she
16 is bedridden two times per month, the record did not contain any
17 complaints so severe as to require bedrest during the period at issue in
18 this case.  (AR at 23, 271, 283).  Accordingly, ALJ Urbin provided
19 specific, legitimate reasons for rejecting Dr. Janoian's opinion.
20 *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996).

21

22 **IV.  <u>Conclusion</u>**

23     Based upon the applicable legal standards, the Court finds that
24 the decision of the Commissioner is supported by substantial evidence
25 and that the Commissioner applied the proper legal standards.
26 \\
27 \\
28 \\

10

1

**ORDER**

2     Accordingly, **IT IS HEREBY ORDERED** that the decision of the
3 Commissioner is **AFFIRMED**.

4     **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of
5 this Order and the Judgment herein on all parties or their counsel.

6

7 DATED:   January 24, 2007

8                                     _____
                                      MARC L. GOLDMAN
9                                     United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11